## KING v. KING. (No. 7476.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 20, 1926.)

**1. Judgment ☞342(2)—May be set aside where procured by perjury or fraud.**

A court of equity may, in a proper case, set aside a judgment procured by perjury or fraud, but that power will not be generously exercised to reopen a judgment after term at which it was rendered.

**2. Judgment ☞378—Petition, alleging newly discovered evidence that judgment had been secured by perjury, insufficient to reopen case.**

Petition, two years after judgment against petitioner had been affirmed, unsupported by affidavit, seeking to reopen case on ground of newly discovered evidence of confession that judgment had been secured by perjury, held insufficient, especially where alleged newly discovered evidence was purely impeaching and cumulative of testimony produced on trial.

Error from District Court, Cameron County; W. B. Hopkins, Judge.

Suit by W. O. King against Mrs. Nettie G. King. Judgment for defendant, and plaintiff brings error. Affirmed.

Spears & Montgomery, of San Benito, and Harbert Davenport, of Brownsville, for plaintiff in error.

Seabury, George, Taylor & Polk, of Brownsville, for defendant in error.

COBBS, J. This is a suit to set aside a certain judgment in the district court of Cameron county, on the ground that said judgment was procured upon perjured testimony of defendant in error. An appeal was taken from that judgment to this court, where it was affirmed. See King v. King, 218 S. W. 1093. The petition was amended, and all details set out at length. There were many special demurrers asserted and urged against it, and many of them were sustained by the court, and, plaintiff declining to amend, the cause was dismissed. The judgment of April 9, 1919, was sought to be set aside by filing this suit on the 1st day of July, 1920, long after the judgment was affirmed

by this court, which was on the 4th day of February, 1920, and after the Supreme Court denied an application for a writ of error.

The ground upon which this application to set aside the final judgment is based is that thereafter, in the presence of two others, defendant in error stated:

"That she had testified falsely in the particulars aforesaid, that she had to swear lies to beat him in the trial of said cause, and that she had done so by reason of such false testimony."

It was alleged in the petition that,

"Defendant's testimony was false and untrue in the following particulars: She didn't furnish to plaintiff her separate money or funds with which to pay for the material used in the construction of improvements on the Olmito lot, but same was paid for as above set out, with funds belonging to plaintiff in his separate right; the 20 acres of land near San Benito was not paid for with money belonging to defendant in her separate right, but was paid for with money which had been made by plaintiff and defendants by keeping a boarding house and post office at Olmito; and the money which was paid for said lot 1 in block 31, San Benito, was not the separate fund of defendant, but was money arising from the sale of said Olmito lot and improvements; and that the improvements placed upon said lot 1 in block 31 in San Benito was not paid for with money belonging to defendant in her separate right, but was paid for with money arising from the sale of said 20 acres of land near San Benito, money borrowed by plaintiff and defendant for which they gave their joint note, and with money arising from rentals received from said lot 1 in block 31.

"Defendant falsely and untruthfully testified for the purpose of inducing this court to render the judgment which it did render, to the effect that said lot 1 in block 31 in San Benito belonged to defendant in her own separate right; and that, at the time of said trial, plaintiff did not know any other testimony which could be introduced to show that defendant had so falsely testified and therefore could not procure such testimony other than was introduced upon the trial of said cause until the early part of 1922, when defendant, in the presence of her brother-in-law Giesecke, J. H. Tomlinson, and plaintiff, stated to plaintiff that she had testified falsely in the particulars aforesaid, that she had to swear lies to beat him in the trial of said cause, and that she had done so by reason of such false testimony.

"Said cause No. 3076 was tried in this court, and on the 9th day of April, 1919, a judgment was rendered against plaintiff and for the defendant, decreeing that said lot 1 in block 31, in the town of San Benito was the separate property of defendant, and that plaintiff had no interest therein, except to the extent of certain sums of community funds paid towards the construction of said improvements, and that plaintiff had a homestead interest in said property, and in said decree it was provided that he would have a right to keep and occupy a room in said building.

"Said judgment was procured upon the testimony of defendant to the effect that she paid out of her own separate means for the improvements placed upon said Olmito lot, the purchase money for said 20 acres of land in block 80 near San Benito, and the purchase money for said lot 1 in block 31, in San Benito, and for the lumber and material used in the construction of said buildings on said lot 1 in block 31, in San Benito, when in truth and in fact defendant did not pay said sums of money out of her own separate means, but said respective properties were paid for with funds of the kind and character as hereinabove alleged, and defendant, upon the trial of said cause and in the particulars aforesaid, testified falsely and fraudulently, and upon such false and fraudulent testimony this court was induced to render its judgment."

[1] It is unnecessary to quote more from the petition or the grounds of demurrer, for the real question involved is whether such fraud or perjury has been shown in the procurement of the judgment as will authorize a court of equity, after so great a period of time, to set aside its final judgment.

To justify this suit plaintiff in error relies upon the following authorities: McMurray v. McMurray, 67 Tex. 665, 4 S. W. 357; Avocato v. Dell' Ara (Tex. Civ. App.) 84 S. W. 444; Swearingen v. Swearingen (Tex. Civ. App.) 193 S. W. 442; Ralls v. Ralls (Tex. Civ. App.) 256 S. W. 695; Edson v. Edson, 108 Mass. 590, 11 Am. Rep. 393. No doubt the best considered case on the subject is that of McMurray v. McMurray, supra; the opinion being written by Stayton, that most eminent jurist.

It is not to be denied that a court of equity, when timely appealed to, has the inherent power in a proper case to set aside a judgment procured by perjury or fraud. Perjury through the willful testimony of a party to a suit is so obnoxious to good morals and good conscience as will not for one moment be countenanced by a court of equity. But, while this power is vested in our courts of equity, it will not be generously exercised after the term at which the judgment was rendered so as to reopen and re-examine again, though the judgment was obtained through the perjury of the successful party. Relief has in many instances been granted on the ground that by some fraud, practiced directly upon the party seeking relief against the judgment or decree, the party has been prevented from presenting all of his case to the court. To relitigate a case finally decided does not favorably appeal to a court, unless, as said by Justice Stayton, "it is one on the observance of which the welfare of society largely depends, and should not be frittered away."

In Swearingen v. Swearingen (Tex. Civ. App.) 193 S. W. 442, Justice Moursund, speaking for the court, said:

"We do not understand that our decisions bear out the theory that in no case will a decree be set aside upon the ground that it was obtained because of false testimony. Several of the cases referred to in the motion were discussed in the case of McMurray v. McMurray, supra, and our Supreme Court held that such false testimony in itself constituted fraud, using the following language: 'That the willful giving of false testimony by a party to an action in relation to a matter affecting an issue to be tried is fraud of the most pernicious character cannot be questioned, and for such conduct it has been held that the injured party is entitled to have the cause re-examined.' This court in the case of Avocato v. Dell' Ara, 84 S. W. 443 [444], has followed the McMurray Case, and it has been cited and followed in other cases. In the case of Davis v. Jones, 149 S. W. 727, it was held that a judgment rendered upon false testimony could be set aside in a suit filed six years after its rendition; it being alleged and proven that appellee, without fault on his part, failed to discover such fact until within a reasonable time before filing his suit to set aside the judgment. We conclude that, if false testimony is willfully given by a party to the suit or by others by his connivance or procurement, and if the other party cannot be charged with negligence in failing to prevent judgment being rendered upon such testimony, our courts will entertain a suit to set aside the judgment."

Now, while it is manifest, and the decisions are uniform in holding that the giving of false testimony constitutes intrinsic fraud, it is not alone sufficient to prevent the adverse party from having a full and fair opportunity of presenting his case on the trial. Were there no limitations or qualifications for such rule, there would be no such thing as the finality of judgments. It would leave the door open to be invaded by the contention, in the average case tried, that some witness swore to a lie and admitted it after the trial. So, as said in this jurisprudence, a judgment based upon any fraud in giving false testimony will not cause a solemn judgment to be so lightly held and set aside, unless it operated to prevent the adversary from having a full and fair opportunity of presenting his case on the trial. Kruegel v. Cobb, 58 Tex. Civ. App. 449, 124 S. W. 723; Tex. & Pac. Ry. Co. v. Duff (Tex. Civ. App.) 207 S. W. 580.

[2] Plaintiff in error expressly alleges that the testimony complained of was in reference to matters that were within the knowledge of both husband and wife; that before he brought the original suit he knew that his wife was claiming this property, both lot and improvements, as her separate estate; that in all her pleadings the defendant had alleged that all the money that went into said lot and improvements was her separate funds; that defendant had made contradictory statements to various persons; and that the testimony of these persons taken by deposition was introduced on the trial in plaintiff's behalf; and on the trial plaintiff introduced the testimony of other witnesses

as to who actually paid out the moneys; and in general it appears from the pleadings that this was the only, or at least the main, issue in the case; that all evidence in existence on this issue was introduced; and that the court by its judgment passed upon and determined the truth of Mrs. King's testimony.

In bills to set aside judgments after the court has adjourned, our courts have laid down the rule that:

"It will not be sufficient to show that injustice has been done by the judgment sought to be enjoined. It must further distinctly and clearly appear that this result was not caused by any inattention or negligence on the part of the person aggrieved, and he must, among other matters, show a clear case of diligence and of merit to obtain the interference of a court. of equity in his behalf at such a stage of the case. Relief will not be granted unless the party seeking it can clearly show, to the satisfaction of the chancellor, that he has a good defense to the action which he was prevented from making by fraud, accident, or acts of the opposite party, wholly unmixed with any fault or negligence on his part, he must be able to impeach the justice and equity of the verdict and judgment of which he complains, and to manifest clearly to the court that there is good ground to suppose that a different result would be obtained by a new trial."

This newly discovered evidence was purely impeaching testimony. It was not original testimony in any sense. Even as impeaching testimony, it was purely cumulative of other testimony of the same kind produced on the trial. Plaintiff does not even allege that on another trial the evidence of that statement would produce or probably produce a different result.

More than 16 years passed after the property in question was bought by the parties and deed taken in name of the wife as her separate estate, and 7 years passed before Mr. King attempted to have the deed corrected, though meanwhile the property had increased greatly in value, and was producing rentals as high as $300 per month, which Mrs. King regularly collected. Finally, in August, 1916, Mr. King instituted the original suit to recover an undivided nine-tenths of the property for himself, or, in the alternative, to recover all of it for the community. That suit was pending more than 3 years, during which time the parties frequently amended their pleadings, but in the whole course of these pleadings they alleged specifically the sources of the moneys with which the lot was bought and the improvements erected, and the specific allegations made by the husband were directly contra-

dicted by the specific allegations made by the wife. When the case came on for trial, in 1919, the husband and wife, respectively, testified in accordance with their allegations, and each party had a full opportunity of cross-examining the other. What testimony was produced by Mrs. King in corroboration of her story is, of course, not alleged in the present pleading, but it is alleged that Mr. King produced witnesses testifying to facts tending to corroborate his story regarding the origin of the moneys, and a number of other witnesses who testified to statements made them before the trial by Mrs. King, which statements were in contradiction of her testimony regarding the origin of these moneys. The trial resulted in a judgment in favor of Mrs. King, establishing the property to be her separate property, save that Mr. King had judgment for the community funds used in the construction of the improvements, with the right to reside on the property as a homestead. No decree of divorce was rendered, and the parties are still husband and wife.

From that judgment Mr. King appealed to this court, but the judgment was affirmed in February, 1920, rehearing denied in March, 1920, and his application for writ of error was dismissed by the Supreme Court in December, 1920.

Nearly 2 years later the present bill was filed, seeking to set aside this judgment on the ground that Mrs. King procured it by perjured testimony given on the trial in regard to the source of said moneys. It is not claimed that this testimony came as a surprise or prevented Mr. King in any way from fully presenting his case; on the contrary, this testimony was shown to be in exact accord with Mrs. King's pleadings in the case and with her contentions made before the suit was filed, and Mr. King, knowing this, sought in every way to destroy the force of this testimony by impeachment of his wife on the trial. Mr. King's demand for a reopening of the case is based exclusively on his allegation that in the spring of 1922, Mrs. King told him, in the presence of witnesses, that her testimony as to the origin of the money was false, that she had to swear lies to beat him and had done so, and this allegation comes unsupported by affidavits of the alleged witnesses, and unsupported even by Mr. King's own affidavit.

We think substantial justice has been done in this case, and both parties have had full opportunity of presenting their respective claims.

Finding no reversible error assigned, the judgment is affirmed.