COLEMAN et al. v. EBELING.

(Court of Civil Appeals of Texas. Austin. May 10, 1911. Rehearing Denied June 7, 1911.)

1. VENDOR AND PURCHASER (§ 59*) — CONTRACTS OF SALE—SEVERAL LIABILITY.

A contract by P., C. and K., "parties of the first part;" and L. and E., "parties of the second part," for the sale of lands, recited that the parties of the first part agreed to sell to the parties of the second part land described, and showed that C. and K. owned and agreed to convey the patented lands described, and that P. owned and agreed to convey the school lands. Held, that the contract was several, and not joint, and, where C. and K. performed, and where the contract failed as to the school lands, the purchaser could recover only from P. the purchase money paid for the school lands.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 90; Dec. Dig. § 59.*]

2. CONTRACTS (§ 169*)—CONSTRUCTION—SITUATION OF PARTIES.

Where the language of a contract is ambiguous, the court must put itself, with the aid of oral testimony, in the situation of the parties at the time of the execution of the contract, and thereby more certainly ascertain the meaning of the language used.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 752; Dec. Dig. § 169.*]

3. LIMITATION OF ACTIONS (§§ 37, 100*) — FRAUD—DISCOVERY.

The two years' statute of limitations applies to an action for fraud; but an action begun within two years after the discovery of the fraud by the injured party is not barred by limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 182–186, 480–493; Dec. Dig. §§ 37, 100.*]

Appeal from District Court, Burnet County; Clarence Martin, Judge.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Action by Otto Ebeling against T. A. Coleman and others. From a judgment for plaintiff, defendants appeal. Reversed and rendered in part, and affirmed in part.

C. C. Clamp, for appellants. T. E. Hammond, Dayton Moses, and Ike D. White, for appellee.

JENKINS, J. Appellee brought suit against J. C. Proctor, T. A. Coleman, C. A. Keeran, and R. L. Lacy, alleging, in substance: That said Proctor, Coleman, and Keeran entered into a written contract with said Lacy to sell him and one Evans certain lands in Dimmit county, Tex., including four certain sections of school land, and, contriving and conspiring to wrong, cheat, and defraud the said Lacy, represented to him that the defendant Proctor was the owner of said school land; that he had purchased said land from the state of Texas under and in compliance with the laws providing for the sale of school lands; that he had settled upon said lands and resided on same up to the date of said sale in strict accordance and in compliance with the laws of the state of Texas regulating and pertaining to the purchase and occupancy of state school land; and that there was a fine well of water on said land. That said Lacy believed said statements to be true, and, relying upon the same, paid said Proctor, Coleman, and Keeran the sum of $4,021.80 for said land, and received from said Proctor a deed to said lands. That in truth and in fact the said Proctor had never settled upon or resided upon said land, as by law required of the purchaser of school land, and that there was no well on said lands, all of which was well known to said Proctor, Coleman, and Keeran at the time said contract was executed, but was unknown to said Lacy. That in consequence of the failure of said Proctor to settle upon and to continue to reside upon said land, as by law required, the Commissioner of the General Land Office had canceled the sale of said school sections to said Proctor, and had sold them to other parties. That by reason of the premises the said Proctor, Coleman, and Keeran had become indebted to said Lacy in the amount so paid for said school land, and that said Lacy had transferred his said claim against said parties to appellee herein, and had in writing guaranteed the payment of same. Coleman and Keeran excepted to appellee's petition as showing no cause of action against them, but only a separate cause of action against Proctor. Proctor also excepted to said petition as showing a misjoinder of parties. The petition, in addition to the facts above set out, alleged that said contract was also for the sale of other lands belonging to Coleman and Keeran, referred to in said contract hereinafter set out. Proctor, Coleman, and Keeran pleaded the two-year statute of limitation and a general denial. The case was tried before the court without a jury. All exceptions were overruled, and judgment was rendered for appellee for $3,840, the amount paid by Lacy, with interest from September 1, 1907. Proctor, Coleman, and Keeran have appealed from said judgment upon assignments of error filed separately by Coleman and Keeran and by said Proctor.

Findings of Fact.

The contract referred to in appellee's petition was as follows:

"The State of Texas, County of Bexar.

"This memorandum of agreement made on this the 15th day of December, A. D. 1906, by and between T. A. Coleman and C. A. Keeran and J. C. Proctor, acting herein by their duly authorized agent C. C. Clamp of Bexar county, Texas, hereinafter called parties of the first part, and R. H. Evans and R. L. Lacy, both of Burnet county, Texas, hereinafter called parties of the second part, witnesseth: That said parties have this day made and entered into the following contract of sale and purchase of the following tenor and effect, that is to say:

"First. The parties of the first part hereby agree to sell and convey by deed with covenants of general warranty unto the parties of the second part the following described land and premises, lying and being situated in the county of Dimmit and state of Texas, and consisting of the following surveys:

| Abst. | Certif. | Sur. | Original Grantee. | Acres. |
|---|---|---|---|---|
| 711 | 0—426 | 1 | T. W. N. G. Ry. Co. | 640 |
| 712 | 0—427 | 3 | " | 640 |
| 713 | 0—430 | 9 | " | 640 |
| 714 | 0—431 | 11 | " | 640 |
| 715 | 0—432 | 13 | " | 640 |
| 716 | 0—433 | 15 | " | 640 |
| 717 | 0—434 | 17 | " | 640 |
| 718 | 0—435 | 19 | " | 640 |
| 719 | 0—436 | 21 | " | 640 |
| 720 | 0—437 | 23 | " | 640 |
| 721 | 0—438 | 25 | " | 640 |
| 722 | 0—439 | 27 | " | 640 |
| 723 | 0—440 | 27 | " | 640 |
| 724 | 0—441 | 31 | " | 640 |
| 725 | 0—442 | 33 | " | 640 |
| 942 | 82 | 1 | Gilbert & Brooks | 640 |
| 1081 | 0—426 | 2 | E. F. Fisk | 640 |
| 1082 | 0—427 | 4 | " | 640 |
| 1083 | 0—431 | 12 | " | 640 |
| 1084 | 0—432 | 14 | " | 640 |
| 1085 | 0—433 | 16 | " | 640 |
| 1087 | 0—442 | 34 | George Fisk | 640 |
| 1088 | 0—437 | 24 | " | 640 |
| 1090 | 0—438 | 26 | " | 640 |
| 1091 | 0—441 | 32 | " | 640 |
| 1092 | 0—440 | 30 | " | 640 |

—containing in the aggregate 16,640 acres of land, and being the same identical land conveyed by Higgans and others to said Coleman and Keeran on July 26, 1900, which deed is duly recorded in the deed records of Dimmit county; also survey No. ——— in the name of Nancy A. Boone, containing 1280 acres of land, abst. 983, cert. 896. All of the foregoing described land containing in the aggregate 17,920 acres, which land is title land and owned by the said Coleman and Keeran.

Also the following school sections owned by the said J. C. Proctor, to wit: Sections 10, 20, 22, and 28 in block No. 10, T. W. N. G. R. R. Co. of 640 acres each, the Proctor school land aggregating 2560 acres.

"Second. The parties of the first part agree to sell said land and the parties of the second part agree to purchase said land, paying therefor the sum of four dollars and fifty cents ($4.50) per acre, which is payable as follows: Five thousand ($5,000) dollars cash at the signing of the contract, receipt of which is hereby acknowledged by the parties of the first part, which $5,000 belongs to the said Coleman and Keeran; twenty-one thousand eight hundred and eighty ($21,880) is payable by the parties of the second part to the said Coleman and Keeran when this deal is consummated and deed executed as hereinafter provided for. The balance of the purchase money of said Coleman and Keeran land of seventeen thousand nine hundred and twenty (17,920) acres is payable in three (3) equal annual payments evidenced by three (3) vendor's lien promissory notes, which notes shall be executed by the parties of the second part when the deed is executed, which notes shall be due and payable on or before September 1, 1908, September 1, 1909, and September 1, 1910, respectively, each of said notes to bear six per centum (6 per centum) interest per annum, interest payable annually. Said interest to begin on said notes September 1, 1907, and is payable annually thereafter. Said notes providing that default in the payment of any installment of interest or of any principal note shall, at the option of the holder thereof mature the entire indebtedness, said notes having the usual attorney's fee clause therein, said notes payable to the order of T. A. Coleman and C. A. Keeran at San Antonio, Bexar county, Texas, and said notes retaining a vendor's lien upon the said 17,920 acres above described, which notes shall be executed by the parties of the second part. The parties of the second part bind and obligate themselves to pay for the said four (4) Proctor sections the sum of four dollars and fifty cents ($4.50) per acre, which sum is payable as follows: On the day this deal is closed, as hereinafter provided for by the execution of the deed from Coleman and Keeran to the said parties of the second part, the parties of the second part shall then pay at said time to the said Proctor the sum of $4.50 per acre for all said four (4) sections, less the amount due the state of Texas thereon, which sums of money the parties of the second part bind and obligate themselves to assume. The balance of the purchase money of the said four (4) sections above the amount due the state of Texas shall be paid at the time of the signing of the deed from Coleman and Keeran to the parties of the second part, for the title land. The said Proctor agreeing on his part to continue to reside upon said four sections in full compliance with the law of the state of Texas until September 1, 1907, at which time the said J. C. Proctor shall execute to the parties of the second part or to persons whom they may indicate a special warranty deed for said four sections.

"Third. The said Coleman and Keeran agree to convey the said title land by deed with covenants of general warranty and agree that said land shall be cleared of all incumbrances whatsoever, including taxes for all years, except the year 1907 taxes, for which taxes upon said land they agree to pay to September 1, 1907, the parties of the second part paying for the remainder of the year.

"Fourth. Possession of said property shall be given by the parties of the first part to the parties of the second part on September 1, 1907, up to said time the parties of the first part shall use and occupy the same precisely as they are doing now; they agreeing not to overstock the ranch.

"Fifth. The said Coleman and Keeran shall, at their own expense, deliver to the parties of the second part at San Antonio, Texas, an abstract of title down to date for all said title land. The said abstract shall show good title and if the same does not show good title, then the parties of the first part shall have a reasonable time to perfect and make a good title, after which said deal shall be closed at San Antonio, Bexar county, Texas, and this contract shall be consummated by the said Coleman and Keeran executing said deed as provided for herein, the said Proctor executing the contract as provided for; the said parties of the second part paying to the said Coleman and Keeran the said $21,880. The balance of the one-third purchase money for the title land and executing the notes as provided for, upon the parties of the second part paying to the said Proctor the said purchase money for the said school sections in cash, less the amount due the state of Texas at said time. This abstract shall be delivered within forty (40) days from this date, and the parties of the second part shall have thirty (30) days thereafter in which to examine the same. Provided that no abstract of title shall be furnished of the Proctor land, as it is school land, further than the said Proctor furnishing the certificate from the Commissioner of the General Land Office that said school files are in good standing. If the parties of the second part have any objections to the title of any of the title land, they shall at once point out such objections to the parties of the first part, the said Coleman and Keeran, that they may be cured, and as stated the said Coleman and Keeran shall have a reasonable time in which to have such objections removed. If said objections cannot be removed or cured, within the thirty (30) days after the delivery of the abstract, but can within a reasonable time thereafter, they shall have such reasonable time, and when such objections are cured the deal shall be finally closed. Said defects of title, if any

are pointed out, must be substantial defects, affecting the title of the property; if the title to said patented lands shows not to be good and the same cannot be made good, as hereinbefore provided for, then this deal shall be annulled and abrogated, and the parties of the first part shall repay at San Antonio, Texas, to the parties of the second part the said five thousand dollars, without interest this day paid, and no further liability shall rest hereunder one to the other. If the parties of the first part furnish the abstract as herein provided for and the same shall show good title, or the title of said patented lands is made good as herein provided for, and the said Coleman and Keeran stand ready, willing and able to execute the deed as herein provided for, and the parties of the second part shall fail, neglect or refuse to pay the balance of the cash payment of $21,880 as before provided for, and execute the notes as hereinbefore provided for, then in such event they, the parties of the second part, shall forfeit the said five thousand dollars this day paid and this contract shall be abrogated and annulled and no further liability shall rest hereunder one to the other. Or if the parties of the second part fail at said time to pay to the said J. C. Proctor the entire balance of cash between the $4.50 per acre and the amount due the state of Texas, they shall forfeit the five thousand dollars this day paid, and this contract shall be abrogated and annulled and no further liability shall rest hereunder, one to the other, and if the parties of the second part shall find said title good as herein provided for, shall stand ready, able and willing to pay the balance of the cash to said Coleman and Keeran and execute the note as herein provided for, the said Coleman and Keeran shall fail, neglect and refuse to execute the deed, as herein provided for, and the said Proctor shall fail, neglect and refuse to execute the contract for the deed, as herein provided for, then in such event the parties of the second part shall have a cause of action against the parties of the first part, enforceable in the courts of Bexar county, for specific performance of contract.

"Sixth. The said deed when executed by the said Coleman and Keeran, or a supplemental agreement, if they so elect, shall provide that upon the sale of this land by the parties of the second part, provided the same is sold for not less than $4.50 per acre and one-third (⅓) cash and notes, one (1), two (2) and three (3) years, that upon delivery to them or the holder of the notes herein provided for, and the vendor's lien notes executed by the purchasers that such purchasers shall have the right to require, and the parties of the first part shall execute release of these vendor's lien notes herein provided for, so that the only lien upon the land will be the purchase money notes executed by the purchaser from the said parties of the second part. Witness our hands in triplicate at San Antonio, Texas, on this the 15th day of December A. D. 1906.

"T. A. Coleman.
"C. A. Keeran.
"J. C. Proctor,
    "By C. C. Clamp, Agt.
"R. H. Evans.
"R. L. Lacy."

Said contract was executed under the following conditions: Said 16,640 acres of land was the property of said Coleman and Keeran, and was known as the "California tract"; and one Kirkpatrick of San Antonio was the agent of said owners, and authorized to sell the same at $4.50 per acre. Kirkpatrick sent one Johnson with Lacy and Evans to show them said land. Johnson was not familiar with the location of said land, and in showing the same to Lacy and Evans showed them also the Nancy Boone tract, which adjoined the California tract, and upon which there were valuable improvements, consisting of two wells and a large tank or reservoir. In looking at said lands, they saw also a portion of the school lands belonging to Proctor; the same being located in the same pasture with the other lands. After looking at said lands, said parties came to San Antonio and agreed with Kirkpatrick to take the California lands at $4.50 per acre; they not knowing that the same did not include said improvements. Lacy, Evans, Kirkpatrick, and Johnson went to the office of C. C. Clamp for the purpose of having the contract of sale drawn up and signed. There they learned from a conversation over the phone between Kirkpatrick and Coleman that the said improvements were on the Nancy Boone surveys, and not included in the California tract. Clamp called up Coleman over the phone; he being at Encinal at the time, and Proctor also being there. After having the talk with Clamp, Coleman informed Proctor that he was on a deal to sell the California tract at $4.50 per acre, but that under his contract with Kirkpatrick he was to pay a commission on said sale of 5 per cent., and in addition thereto 50 cents per acre, and asked Proctor if he wanted to put his land in on the deal. Proctor replied that he would put it in at $4.50 net, but would pay no commission. Lacy and Evans insisting on getting the land upon which the wells and reservoir were situated, Clamp again called up Coleman, who informed him that the Nancy Boone surveys might go in the deal if the parties would also take the Proctor lands, but that no commissions would be paid on the Boone surveys or the Proctor lands. All parties, including Kirkpatrick, having agreed to this, the above contract was executed. There was, however, an agreement between Lacy and Evans that Evans was to have no interest in the Proctor lands; he having objected to taking the same.

Clamp was authorized to execute said contract in behalf of Coleman and Keeran in so

far as it related to said 17,920 acres of land owned by them, but was not authorized to execute for them any contract in reference to the Proctor lands. Clamp was authorized to execute said contract in behalf of Proctor in so far as it related to said four sections of school land, but was not authorized to execute for him any contract in reference to said Coleman and Keeran lands. Coleman and Keeran owned no interest in the Proctor school lands, and Proctor owned no interest in the titled lands belonging to Coleman and Keeran. Proctor was and for many years had been a boss on Coleman's ranch, and Coleman's interest in the sale of the Proctor land was only that of a friend.

On March 11, 1906, Coleman and Keeran having furnished a satisfactory abstract of title, the deal between them and Lacy and Evans was closed by their executing to said Lacy and Evans a deed to said 17,920 acres of land, and by said Lacy and Evans making the cash payment and executing the notes, as in said contract provided.

On the same day Proctor, by his agent, Clamp, executed and delivered to said Lacy and Evans the following contract:

"The State of Texas, County of Bexar.

"Whereas, heretofore, to wit, on the 15th day of December, A. D. 1906, my duly authorized agent, C. C. Clamp, of Bexar county, Texas, entered into a written contract with R. H. Evans and R. L. Lacy of Burnet county, Texas, wherein and whereby I agree to convey to the said Evans and Lacy the following described school sections of land owned by me, lying and being situated in Dimmit county, Texas, viz.:

| Sur. | Cert. | Original Grantee. | Purchaser. | Acres. |
|------|-------|-------------------|------------|--------|
| 10 | 0—430 | T. W. N. G. R. R. Co., | J. C. Proctor | 640 |
| 20 | 0—435 | " | " | 640 |
| 22 | 0—436 | " | " | 640 |
| 28 | 0—439 | " | " | 640 |

"And whereas, said Evans and Lacy agree to purchase from me said land and pay therefor the sum of four dollars and fifty cents ($4.50) per acre, minus the amount of principal and interest due by me to the state of Texas the date when the deal we consummated, to wit, on the 21st day of February, 1907;

"And whereas, the amount due the state of Texas on said property, principal and interest on said March 1, 1907, amounts to the sum of $7,722.84;

"And whereas, the amount due me under said contract at $4.50 per acre is the sum of $11,520 leaving due me a bonus clear of $3,797.16, since which time, through my said agent, I have remitted to the treasurer the interest upon said accounts, although the sum is not due. This done because the attorney for the purchasers deemed it necessary, which interest amounts to the sum of $224.64, which interest if applied by the state at this time is required to be refunded by the said purchaser to me, which would

make coming to me $4,021.80, if said interest is not applied, but is returned to me, the net balance due me as stated would be $3,797.16, and this contract and the payment to me of $3,797.16 shall be made to me clear, and if the state accepts the interest that I sent through my attorney, the said purchasers bind and obligate themselves by the acceptance of this contract to refund such interest of $224.64, which is payable to the said C. C. Clamp, agent at San Antonio, Texas:

"Therefore, in consideration of the premises and the payment to me of the said sum of $3,797.16, and the further sum of $224.64, provided the state accepts said interest, I, the said J. C. Proctor, bind and obligate myself that I will continue to reside upon and occupy said sections in strict compliance with the laws of the state of Texas, until September 1, 1907, and on, to wit, September 1, 1907, I bind and obligate myself on said date to execute to said Evans and Lacy, or to whomsoever they may indicate, a deed for all said tracts of land, which shall substitute the said Evans and Lacy, or the persons to whom said deed is given, with all the rights, title and interest I have in said lands so that the said purchaser from me may be fully invested with the title to said property upon his substituting himself as the purchaser and continuing my residence thereon.

"Witness my hand on this 11th day of March, A. D. 1907.

        "J. C. Proctor,
          "By C. C. Clamp, Agt."

Thereafter on the ———— day of October, 1907, Proctor executed and delivered to Lacy a special warranty deed to said four sections of school land, and delivered possession of said land to said Lacy.

Said Lacy had said deed recorded in Dimmit county, and sought to have himself substituted as purchaser of said school land from the state of Texas. The Commissioner of the Land Office refused to make such substitution, and canceled the sale to said Proctor for nonsettlement, and subsequently sold said land to another party.

The evidence is sufficient to sustain the finding of the court, which is necessarily implied from the judgment rendered herein, that said forfeiture was properly made.

Neither Coleman, Keeran, Proctor, nor their agent, Clamp, made any representation to Lacy or Evans as to Proctor's having complied with the law in reference to settling or residing on said land, further than is to be implied in the covenant in said contract that said Proctor would "continue to reside upon said four sections in full compliance with the law of the state of Texas until September 1, 1907." Neither Coleman, Keeran, nor Proctor ever saw Lacy or Evans until after the execution of said contract. Clamp had no knowledge, and did not claim to have any knowledge, as to Proctor's set-

tlement or residence on said land. The only representation made by Clamp in reference to said school lands was that it was lawful for Proctor to make a contract to continue to reside on said land until he executed a deed to Lacy and Evans.

Neither of said parties made any representation to Lacy or Evans as to there being a well on said school lands, but in fact there was a well on what at the time was supposed to be one of said sections.

## Conclusions of Law.

[1] The contract sued on is several and not joint. It is true that it mentions Proctor, Coleman, and Keeran as "parties of the first part," and Lacy and Evans as "parties of the second part"; but this, we take it, merely designates who are the sellers and who the buyers. It further says that the parties of the first part agree to sell to the parties of the second part all of the land mentioned in said contract, which would indicate a joint undertaking. But these general provisions are controlled by the special provisions, which clearly show that Coleman and Keeran are the owners of the patented lands therein mentioned, and that Proctor is the owner of the school lands, and that Coleman and Keeran, and not Proctor, are to convey the titled lands; and Proctor, but not Coleman and Keeran, is to convey the school land. Looking to the whole instrument, we think it clearly indicates a separate and not a joint undertaking.

[2] But, if the language is ambiguous, a well-known rule of construction requires us to put ourselves, with the aid of oral testimony, in the situation of the parties at the time the contract was written, so that we may more certainly ascertain the meaning of the language used. The evidence shows that Coleman and Keeran, through their agent Kirkpatrick, had offered to sell Lacy and Evans the titled lands described in this contract, except the Nancy Boone surveys, but had not offered to sell the school land; that, at the time the contract was drawn, Coleman offered to include the Nancy Boone surveys, and Proctor offered to put in the four school sections. There was no claim by Coleman and Keeran that they had any interest in the school sections, and nothing was said at the time, or at any time, to induce Lacy and Evans to suppose that Coleman and Keeran claimed any interest in these school sections. The subsequent agreement above set out, between Lacy and Evans on the one part and Proctor on the other, shows that they understood that they were dealing with Proctor alone with reference to the school lands. Coleman and Keeran were not asked to sign his subsequent contract, nor to assent to it. So far as the record shows, they never heard of it

until this suit was brought. They had fully complied with their contract, and the appellee failed to show cause of action against them.

Proctor also complied with his part of said contract, unless it be that he failed to reside on said land from the date of the execution of said contract to September 1, 1907. But the evidence as above set out shows a cause of action against Proctor in this: The title to said school land has wholly failed, and the purchasers are entitled to recover back the purchase money paid by them. Cattle Co. v. Bedford, 91 Tex. 642, 44 S. W. 410, 45 S. W. 554; Lamb v. James, 87 Tex. 490, 29 S. W. 647.

[3] Appellants insist that this case should be reversed and rendered in their favor on their plea of limitation. We hold with their contention that, this being a suit to recover for fraud and deceit, the two-year statute applies; but we further hold that as said fraud was not discovered by Lacy, and he had no knowledge of any fact putting him on inquiry as to such fraud prior to July, 1906, and as this suit was brought in April, 1908, the cause of action herein is not barred by the two-year statute of limitation.

The judgment herein is here reversed and rendered in favor of Coleman and Keeran, and affirmed as to appellant Proctor. The cost of this appeal will be adjudged against appellee.

Reversed and rendered in part, and affirmed in part.