**SCHEPS v. GILES.    (No. 588.)**

(Court of Civil Appeals of Texas. Beaumont.
May 19, 1920. Rehearing Denied
June 9, 1920.)

1. **Appeal and error** ⊜⟩1040(10)—**Overruling of exceptions on ground of misjoinder of actions held harmless.**

Though one paragraph of plaintiff's petition for damages for breach of a contract of employment alleged damages not properly included within exemplary damages growing out of breach of the contract, the overruling of an exception to the petition on the ground of misjoinder of actions was harmless, where the prayer and fourth paragraph limited recovery to exemplary damages based on the breach of the contract, and such issues alone were submitted to the jury.

2. **Damages** ⊜⟩89(2) — **Malicious breach of contract subjects wrongdoer to exemplary damages.**

While ordinarily exemplary damages are not allowed for breach of contract, the breach may be accompanied by such malicious and oppressive conduct as to subject the wrongdoer not only to actual but also to exemplary damages.

3. **Master and servant** ⊜⟩41(5)—**Exemplary damages for breach of contract of employment held warranted.**

In an action for damages for breach of contract of employment, *held,* that employer's conduct in asserting before others that plaintiff, a woman, was a liar, etc., was so wanton and malicious as to warrant the allowance of exemplary damages.

4. **Trial** ⊜⟩143 — **Conflicting evidence is for jury.**

It is for the jury to determine conflicts in the evidence.

5. **Master and servant** ⊜⟩41(5)—**$500 exemplary damages for discharge held not excessive.**

An award of $500 exemplary damages for breach of contract of employment *held* not so excessive or unreasonable as to show passion or prejudice; it appearing, according to plaintiff's testimony, that her employer accused her of being a liar.

6. **Exceptions, bill of** ⊜⟩54—**Bystanders' bills filed after term and unverified cannot be considered.**

Bystanders' bills filed in April after trial had in November, which were not verified by bystanders or any one else, and which were filed after adjournment of the term at which cause was tried, cannot be considered.

Appeal from Harris County Court; R. M. Love, Judge.

Action by Anna Giles against Adolph Scheps. From a judgment for plaintiff, defendant appeals. Affirmed.

Heidingsfelders and Norman C. Kittrell, all of Houston, for appellant.

Rowe & Kay, of Houston, for appellee.

WALKER, J. This suit was brought by the appellee against the appellant for damages, actual and exemplary, for breach of the following contract:

"I, Adolph Scheps, hereby agree to pay in salary to Anna Giles for eight months within one year, $25.00 for services per week as trimmer and two months between seasons at $18.00 per week, two months vacation—no pay one month in summer and one in winter. I, Adolph Scheps, also agree to pay Miss Giles' transportation from New York to Houston, Texas, only.

"[Signed]    A. Scheps.
"Anna Giles."

The case was submitted to the jury on the following issues:

(1) "Was plaintiff discharged by the defendant substantially as alleged in plaintiff's petition?" To which the jury answered, "Yes."

(2) "Was the discharge of plaintiff by defendant without lawful cause therefor?" To which the jury answered, "Yes."

(3) "If you find the answer to foregoing question No. 1 in the affirmative, and only in such event, then what amount do you find to be due the plaintiff under said contract?" To which the jury answered, "$280.27."

(4) "Was the discharge of plaintiff by defendant without lawful cause and done in a malicious and humiliating manner, and did the same pain and humiliate the plaintiff?" To which the jury answered, "Yes."

(5) "If you answer the question in special issue No. 4 in the affirmative, and only in such event, then say by your answer to said issue what amount you find as exemplary damages?" To which the jury answered, "$500."

On this verdict, judgment was rendered for plaintiff. Defendant has appealed to this court and has assigned errors.

[1] Appellant's first assignment of error is that the court erred in overruling defendant's special exception to plaintiff's petition on the ground of misjoinder of causes of action.

In the first paragraph of her petition, plaintiff states the contract. In the second paragraph she alleges the breach thereof by defendant, and states her actual damages in the sum of $318.50. The balance of her petition is as follows:

"III. Plaintiff alleges that at the time of the tortious breach of the contract by said defendant, as aforesaid, the said defendant was insulting, oppressive, and threatening in his manner and publicly and in the presence of one Mrs. Glasgow called the plaintiff a liar several times, and without any excuse or justification therefor, discharged the plaintiff. That the words spoken and pronounced in public against and concerning this plaintiff were violently abusive, and were false and untrue and were willfully, maliciously, and falsely spoken and pronounced in public by the said defendant for the purpose, and with the intention not only to injure this plaintiff, but to humiliate her and cause her to lose the esteem and re-

---

⊜⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

spect of her friends, and the same did injure her in her business and profession; and such language did injure and humiliate her and cause her much mental pain and distress to her damage in the sum of $500, for which sum this plaintiff sues as and for exemplary damages.

"IV. That by reason of the premises plaintiff has sustained actual damages in the sum of $318.50.

"That by reason of the malicious, willful, wrongful, and fraudulent breach of his said contract with the plaintiff, she is entitled to recover exemplary damages in the sum of $500.

"Wherefore, premises considered, plaintiff prays the court that the defendant be cited to appear and answer this petition, and that on final hearing hereof she have judgment against the defendant for the sum of $318.50, actual damages, and for the sum of $500 as exemplary damages; for costs of suit in this behalf expended, and for such other and further relief, in law or in equity, to which she may be entitled; and as in duty bound the plaintiff will ever pray."

If by her third paragraph she has stated damages not properly included within exemplary damages, growing out of the breach of contract, she has waived such relief by the fourth paragraph of her petition and by her prayer. It clearly appears that plaintiff was suing for $318.50, the balance due her under the contract, and for $500 exemplary damages "by reason of malicious, wilful, wrongful, and fraudulent breach of said contract with the plaintiff." She prays:

"That on final hearing hereof she have judgment against the defendant for the sum of $318.50, actual damages, and for the sum of $500 as exemplary damages."

Such exemplary damages are merely based on the breach of the contract. These were the only issues submitted to the jury.

[2-4] Ordinarily, exemplary damages are not allowed for breach of a contract, but the breach may be accompanied by such malicious and oppressive conduct as to subject the wrongdoer not only to actual damages, but also to exemplary damages. G. C. & S. F. Ry. Co. v. Levy, 59 Tex. 543, 46 Am. Rep. 269; Tignor v. Toney, 13 Tex. Civ. App. 518, 35 S. W. 881; Hooks v. Fitzenrieter, 76 Tex. 277, 13 S. W. 230; Burnett v. Edling, 19 Tex. Civ. App. 711, 48 S. W. 775; Southwestern Tel. & Tel. Co. v. Luckett, 60 Tex. Civ. App. 117, 127 S. W. 856; Oklahoma Fire Ins. Co. v. Ross, 170 S. W. 1064. As shown by the testimony of appellee, in which she was fully corroborated by Mrs. Glasgow, appellant was very insulting to her at the time he discharged her. She said:

"I went to work on Thursday morning, and Mr. Scheps had three hats laying aside, and he asked if that was all the work I had done the day before, and I said, 'No,' and he said, 'Where is it?' and I said, 'You came up here yesterday and carried it down,' and he said: 'You are a liar. I didn't do anything of the kind.' And I said: 'You are mistaken, when I came in

from lunch I met you coming down with a lot of hats, and in the afternoon you came and got some more.' And he said, 'You are a liar. I didn't do anything of the kind.' And I then said to Mrs. Glasgow, 'Don't you remember all the hats I trimmed in the morning with the flowers on them?' and she said, 'Sure I remember,' and he said: 'I don't need you to prove anything by either one of you. You are both one. Take your hat and coat and get out. I wouldn't tolerate you another minute.' He told me three times to take my hat and coat and get out. He did not make any motion, or move, or anything; just stood there and talked with me in a very abusive manner. He walked around the table toward me, but that is not the time I left. I waited until he went downstairs. No, sir; I was not afraid of him, but his language humiliated me, surely it did, because I never had anything like that happen to me before in my life. Mrs. Glasgow was present at the time this took place. It made me feel badly and hurt my feelings, too, to think that I had tried to do my duty, and then to be talked to like that."

Appellant's version, in which he is corroborated by one of his witnesses, is as follows:

"When I went up there in the morning, I noticed a hat that had been laying there five or six days and had not been fixed, and I told her, 'This buckle needs tacking,' and I looked around, and I said, 'Miss Giles, have you had any orders yesterday?' and she said, 'No,' and said, 'Why?' and I said, 'Have you trimmed any more than these hats?' and she said, 'Yes,' and I said, 'Where are they? Here are the hats, the three hats.' And she said, 'I did trim more than three hats,' and I said, 'Where are they?' and she snapped me up and said, 'Do you mean to call me a liar?' and I said, 'No.' So I said: 'I didn't call you a liar. Here are the three hats that speak for themselves. Here is the proof of the pudding.' And she said, 'Mrs. Glasgow, didn't I trim more than three hats?' and in reply, she said: 'Yes, I think so, I think you trimmed some with flowers.' And I said, 'What is the use of taking her into the conversation, she is tending to her work?' and she said, 'Do you mean to call us both a liar?' She was sore and angry, and she had a hat in her lap, and she got hold of the hat and was about to swing it, and I saw that, and I said: 'I think you and I are through. You better get your hat and coat and leave.' She told me, 'You are one,' and got hold of the hat as if to throw it at me, and I immediately left the workroom and went downstairs, and Miss Giles sat up there about 20 minutes, and I got busy at my desk, and she picked herself up and left."

Cam Kay, attorney for plaintiff, testified as follows in regard to the statement by Mr. Scheps:

"I drove down to his place after I wrote him this letter, and I asked if he wanted to make a settlement of this thing, or did he want to go to court, as Miss Giles had told me she was going to sue him and have him prosecuted, and he asked what we would be satisfied with, and I told him we would be satisfied with the

payment of her money up to the end of her contract, and he said: 'I cannot give you an answer now; I will have to see my lawyer, and will tell you to-morrow.' And the next day he didn't come up, and I telephoned him and asked him if he had seen his lawyer, and he said yes, and that he would come up, and he came up and said he did not tell me he wanted Miss Giles to go back to work. He did say, 'My lawyer has written her a letter and registered it,' and I said: 'I have nothing to do with that. You pay her according to her contract up to the 18th day of January, and she will be satisfied.' And he said, 'I will not do that,' and I said, 'There is nothing open but to go into court.' I was looking out for Miss Giles' case, and I did ask him if her work was satisfactory, and he said, 'Absolutely, no disagreement at all about her work,' and I said, 'Did she fulfill her contract?' and he said, 'Yes, but she disputed my word, and I would allow no woman to work for me and dispute my word,' and I said, 'She says you called her a liar,' and he said, 'That will be settled in court,' and I said, 'All right.'"

We believe the testimony of plaintiff and her witnesses. Mrs. Glasgow, and Mr. Kay, bring this case within the rule announced by the decisions cited above. The issue being properly submitted, it was for the jury to decide who was telling the truth. As this issue was resolved in favor of the plaintiff, we will not disturb it.

[5] The third assignment of error complains of the judgment as being excessive and unreasonable, and that it was rendered through passion and prejudice. This assignment is overruled. If the defendant used toward Miss Giles the language testified to by her (and the jury were the proper judges of this issue), the verdict was in no sense excessive and unreasonable.

[6] The second assignment complains of the admission of certain testimony. Appellant has attempted to present this question in six bystanders' bills of exception, which are not approved by the trial judge; each of them having this statement:

"The above bill of exception No. ――― (this being filled by the number of the bill of exception), which reflects the true facts was presented to the judge of the court and to counsel for appellee, and same could not be agreed to, as between counsel for appellant and ap-

pellee and the court, the trial judge refused to sign the same or order same filed. Therefore this bill is presented and the undersigned witnesses thereto state that they and each of them were present at the trial of the above cause and were present in court at the time the facts in dispute occurred, and that same as set out above is true and correct. We further state that we are citizens of the City of Houston, Harris County, Texas.

"[Signed] N. L. Jacobs.
"Ed Carr.
"P. G. Houchins."

These bills of exception were filed April 4, 1919. This case was tried November 29, 1918. None of these bills were verified by the bystanders, nor by any one else. The term of the court during which the case was tried adjourned on January 4, 1919. As presented by these bills of exception, we cannot review the action of the court in admitting the testimony complained of.

Justice Carl, in Kenedy Mercantile Co. v. Western Union Telegraph Co., 167 S. W. 1094, states the rule:

"Appellant has one bill of exceptions, which is not approved by the trial court, but which is signed by three persons who are called bystanders. The parties so signing do not swear to the matters set out in the bill. The judgment was November 25, 1913, and the bill of exceptions is dated January 6, 1914. It has been held that, to meet the requirements of article 2067, the bill must be prepared and sworn to and filed at the time of the occurrence of the matters to which it relates (Dehougne v. Western Union Tel. Co., 84 S. W. 1068; Shook v. Shook, 145 S. W. 699), and when it is not verified it will not be considered. (G., C. & S. F. Ry. Co. v. Holt, 30 Tex. Civ. App. 330, 70 S. W. 591.) The affidavit of one bystander is not sufficient since the statute requires three. Taylor v. State, 87 S. W. 1039."

The fourth assignment is that the court erred in not entering judgment for defendant, as per prayer therefor made by defendant; and the fifth is that the court erred in overruling defendant's motion for new trial for the reasons set forth therein. These assignments are in all things overruled.

Finding no error in this record, the judgment of the trial court is in all things affirmed.