**BRIGGS v. RODRIGUEZ et al.**

No. 12209.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 10, 1951.

Rehearing Denied Feb. 7, 1951.

Strickland, Wilkins, Hall & Mills, Mission, for appellant.

John C. Myrick, Harlingen, for appellees.

NORVELL, Justice.

E. H. Briggs, the defendant below, has appealed from a judgment rendered on a

jury verdict cancelling a royalty deed executed by appellees, Castulo and Clara Rodriguez, and awarding them a money judgment against appellant for $300 actual damages and $1,000 exemplary damages.

Appellant centers his attack here against that part of the judgment awarding money damages against him. By his first four points, appellant contends that the evidence shows, as a matter of law, that appellees' claim for damages is barred by the two-year statute of limitations. Article 5526, Vernon's Civil Statutes. The defense of limitation was injected into the case by a trial amendment. Issues relating thereto were submitted to the jury by the trial judge and although some contention is made in appellant's brief that the pleadings of appellees were insufficient in certain particulars, it does not appear that any objection was made to the submission of the issues relating to limitation on the grounds that the pleadings were in any way deficient.

■ Appellant's position below and his primary position here is that the evidence shows conclusively as a matter of law that appellees' action was barred. It appears that the alleged fraudulent representations were made two years before appellant's original petition was filed. The evidence is clearly sufficient to show that appellees did not actually discover the fraud until shortly before the suit was filed. The question presented here then is whether or not the appellees failed to use reasonable diligence to discover the fraud. Glenn v. Steele, Tex.Sup., 61 S.W.2d 810.

It appears from the evidence that the appellees had purchased a twenty-acre tract of land from E. P. Cravens through appellant, Briggs, who was acting as an agent for the vendor. Briggs had known Mrs. Castulo Rodriguez since she was a baby and had been acquainted with her husband, Castulo Rodriguez, for a number of years. Appellees lived about two and a half miles from the Briggs residence. Appellees testified that neither of them were able to read the English language and understood very little English when they heard it spoken. Both testified through an interpreter. Some weeks prior to March 10, 1947, Briggs talked with the appellees about their purchasing a ten-acre tract owned by Robin Pate, which adjoined the Cravens tract. It may be inferred that in so doing Briggs was acting as Pate's agent, although he testified that he had an agreement whereby he was to purchase the Pate ten acres as agent for appellees and was to receive the royalty deed hereinafter mentioned as and for a commission. Briggs, apparently with Pate's authority, told appellees that they could buy the land by paying $500 cash and assuming the taxes due thereon. Appellees agreed to this and paid over to Briggs $300 as earnest money and received Briggs' receipt therefor. Appellees thereupon went on the land, and commenced the clearing of brush therefrom so that it could be farmed. Some weeks thereafter, about March 10, 1947, Briggs told appellees that Pate was ready to close the deal but that instead of wanting $500 for the land he now demanded $800, that is, $500 in addition to the $300 theretofore paid as earnest money. Castulo Rodriguez testified that Briggs represented to him "that Mr. Robin Pate had said that I had to pay cash for the land, and if not that somebody else would buy it. * * * Mr. Briggs told me that Robin Pate wanted the five hundred dollars." This was in addition to the $300 already paid. Rodriguez testified that he had lots of confidence in Mr. Briggs and believed what he said; that he believed Pate had demanded the extra $300, and that if he didn't pay it, the property would be sold to someone else and he would lose all that he had put in the land by grubbing off the brush and clearing the land. The testimony of Mrs. Rodriguez corroborates that of her husband. Pate testified that all he ever asked or received for the land was $500. The jury found that appellees were induced to pay over an additional $300 to Briggs by means of false representations. The jury also found that Briggs secured the execution of a royalty deed by the appellees covering the entire thirty acres, by falsely representing to them that such deed was a paper which it was necessary for them to sign in order to secure a deed from Pate.

This royalty deed was ordered cancelled by the court in its judgment.

The jury found that appellees discovered that Briggs had defrauded them of $300 in November, 1949. At that time appellees attempted to sell the ten-acre tract of land purchased from Pate and discovered that in their deed there was a reservation of a one-fourth mineral interest, and that the title was further burdened by the royalty deed which Briggs had fraudulently obtained. Appellees then discussed the matter with Pate, who stated that the entire consideration asked and received by him for his conveyance of the property was $500, and that the mineral reservation contained in the deed was the result of a mistake. Pate promptly quitclaimed all of his apparent interest in and to the property.

The jury answered in the negative an inquiry as to whether or not the appellees should have, by reasonable diligence, discovered prior to December 17, 1947, that the representations made to them by Briggs in procuring the payment of an additional $300, were false. Appellees' original petition was filed December 16, 1949.

Appellant relies primarily upon the provisions of the deed executed by Pate as charging the appellees with notice that the actual consideration demanded by Pate for the conveyance was only $500.

 This is not a suit involving title as between Pate, as grantor, and the appellees, as grantees, and for this reason many of the authorities cited by appellant have no application. When effect is given to the jury's findings, it is apparent that the fraud involved here has the earmarks of a confidence game. Briggs acquired the confidence and trust of appellees, who did not understand the English language. After appellees had taken possession of the land, paid earnest money, and made valuable improvements, Briggs took advantage of this situation to exact $300 over and above the actual consideration by falsely representing to them that Pate would not go through with the original deal, but would sell the property to someone else unless they paid an additional sum of money. In accepting the statements made by Briggs and acting thereon, appellees may have been over trusting and unduly credulous. It may be that a cautious man would not have relied upon Briggs' statements, but would have insisted upon talking the matter over with Pate before paying out any more money. However, the law affords some protection to the credulous, the over-trusting and the ignorant. In order to claim redress for fraud it is not essential that one must have acted with utmost shrewdness and business acumen. Hawthorne v. Walton, Tex.Civ. App., 30 S.W.2d 397. The test of the ordinary prudent man is applicable. Appellant is hardly in a position to complain of the fact that appellees relied upon a representation which he said was true. However, in support of his claim that appellees should have discovered the fraud immediately after it was perpetrated, the appellant blows hot and cold. In his brief he says that, "It is to be borne in mind that appellant was the agent for Pate and was in no fiduciary relationship with appellees." Upon the trial he testified that he was acting for appellees in purchasing the property from Pate and received the royalty deed as a commission for his services.

It is difficult to see how the contents of the deed from Pate have any particular bearing upon the case. Appellees could not read it. The recited consideration was "the sum of Five Hundred ($500.00) and No/100 Dollars *and other good and valuable considerations*." A reading of this deed, even by one who can understand it, does not demonstrate the falsity of the representation that Pate had demanded an additional $300.

██ However, if the provisions of the deed be considered as having any weight, they could not operate to take the issue of reasonable diligence from the jury. In Swearingen v. Swearingen, Tex.Civ.App., 193 S.W. 442, 452, this Court, speaking through Mr. Justice Moursund, said: "The rules of law are well established, but in applying them to the facts of a case great difficulty is frequently experienced, and it appears to us that sometimes they have been so applied as to practically require

the injured party to become suspicious right after the deal is consummated, and start an investigation, although no new facts have come to his knowledge. On the other hand, in some of our cases it is considered that the party is justified in remaining inactive until he has knowledge of some fact which would put him upon inquiry whether the representations were false. Coleman v. Ebeling [Tex.Civ.App.], 138 S.W. 199–204; Isaacks v. Wright, 50 Tex.Civ.App. 312, 110 S.W. 970; Smalley v. Vogt [Tex.Civ.App.], 166 S.W. 1. Each case must be decided upon its own facts, and the conduct of the party must not be judged by what a very cautious and suspicious person would have done under the same circumstances, but by what a person of ordinary prudence, situated as was plaintiff, would have done."

The recent case of Clopton v. Cecil, Tex. Civ.App., 234 S.W.2d 251, decided by this Court on October 25, 1950, holds contrary to appellant's contention. See also: Isaacks v. Wright, 50 Tex.Civ.App. 312, 110 S.W. 970; Smalley v. Vogt, Tex.Civ.App., 166 S.W. 1; Stone v. Burns, Tex.Civ.App., 200 S.W. 1121; Luginbyhl v. Thompson, Tex.Civ.App., 11 S.W.2d 380; McCord v. Bailey, Tex.Civ.App., 200 S.W.2d 885.

█ We hold that the evidence does not show, as a matter of law, that appellees' cause of action was barred by limitation. The question of limitation under the facts of this case was one for the jury. Appellant's points Nos. 1 to 4, inclusive, are overruled.

By his fifth point, appellant contends that the award of exemplary damages cannot be sustained for the reason that no actual damages were awarded by the jury. The award of actual damages is based upon the answers to Special Issues Nos. 4 and 5, whereby the jury found that appellees had paid to Briggs the sum of $300 over and above the amount demanded by Pate and that such payment was induced by means of fraudulent representations.

It seems to be appellant's position that no actual damages are allowed because the measure of recovery was the sum paid out by appellees and was a sum certain.

This point is somewhat expanded in argument so as to assert that the recovery of $300 was upon an assumpsit count for money had and received, and that exemplary damages cannot be awarded for a breach of a implied contract.

█ It is a general rule that a recovery of exemplary damages can not be based upon a mere breach of contract. This rule should, however, be restricted to actual contracts and not to fictitious ones. There is a distinction between a case in which A agrees to pay B $20 and then fails to do so, and one in which A at the point of a gun takes $20 from B and then fails to give it back. Any promise that a holdup man makes to return money to his victim is a fiction pure and simple, and it is a bit incongruous to speak of one seeking a return of money thus illegally taken from him as having "waived the tort and sued in assumpsit." 1 McDonald, Texas Civil Practice, 165.

Professor Arthur L. Corbin (whose work on Contracts is now being published), writing for the Yale Law Journal in 1910, had the following to say:

"The least thought given to the matter will convince one that where one is allowed to waive a tort and to sue in assumpsit, the obligation of the defendant is not really contractual. It is not based upon agreement or consent. The chief thing it has in common with a promissory obligation is that it can be enforced by an action in that stereotype form called assumpsit. But sometimes not even the least thought has been given, and the result is unreasonable conflict, bad logic, and bad law. * * *

"In conclusion, it would appear that there is grave doubt as to the propriety of the whole doctrine of waiver of tort and suit in assumpsit, a doubt which has been expressed by many judges. * * *

"In jurisdictions where the old forms of action have been totally abolished, there should be nothing left of the whole doctrine excepting a few historical echoes." 19 Yale Law Journal 221.

█ Wherever applicable, the option to proceed in contract or tort seems to be for the purpose of affording the plaintiff a

more suitable remedy and not for the purpose of diminishing his rights. There must necessarily be an element of election of remedies present. If there be but one remedy or one measure of actual damages, there can be no election.

■■■■ And even in case of breach of express contracts exemplary damages may be recovered when the wrong complained of constitutes both a breach of contract and a tort accompanied by fraud, malice or oppression. Gulf Coast & Santa Fe Ry. Co. v. Levy, 59 Tex. 542, 46 Am.Rep. 269 (wherein it was said that the tendency of the decisions in courts where technical form of action have been discarded is to apply the same rule for the measure of damages in cases based upon contract which are attended with circumstances of aggravation, as applied in actions founded solely in tort). Annotations, 84 A.L.R. 1352; Sheps v. Giles, Tex.Civ.App., 222 S.W. 348, and authorities therein cited; 13 Tex.Jur. 246, Damages, § 137. By analogy, exemplary damages should also be allowed when the act giving rise to a fictitious implied contract amounts to a wilful tort. The rule allowing exemplary damages, where it is shown that a defendant acted wilfully, maliciously or fraudulently, is one of general application. It is recognized by the common law and is not dependent upon statute. 13 Tex.Jur. 236, Damages, § 129. Its effectiveness is in no way dependent upon common law forms or classes of actions which have never been used or recognized in Texas, 2 Gammel's Laws 262; Walcott v. Hendrick, 6 Tex. 406; 1 Tex.Jur. 610, Actions, § 4, and it seems somewhat academic to now inquire as to whether or not the present action would have been classified as one in assumpsit or an action of trespass on the case at common law. The trial judge and the parties below treated this as a tort action. The jury found that the elements of fraud and malice were present and should effectively answer appellant's contention. Stephens County v. H. C. Burt & Co., Tex.Civ. App., 19 S.W.2d 951. (For a discussion of the common law action of "trespass on the case" as applied to a case wherein the return of money paid out and exemplary damages is involved, see, Greene v. Keithley, 8 Cir., 86 F.2d 238.) As above indicated, this is not a case of election wherein a vendee is suing a vendor for fraud, and may rescind the contract or affirm the agreement and sue for damages. An action will lie against one purporting to act as an agent for the recovery of money paid out because of a wrong for which the agent is personally and independently responsible. Loma Vista Development Co. v. Johnson, 142 Tex. 686, 691, 180 S.W.2d 922, 924. Appellees paid over $300 to appellant upon the fraudulent representation that Pate, the vendor, had raised his price and that if appellees did not meet it, the land would be sold to others and they would lose what they had put into the deal. The measure of their actual damages necessarily was the money they had paid out as a result of these fraudulent representations. No occasion for an election was presented.

■■■■ It was early pointed out by the Supreme Court of this State that a plaintiff does not waive his right to exemplary damages by suing for the return of the consideration he had parted with because of fraud or duress. In Oliver v. Chapman, 15 Tex. 400, Mr. Justice Wheeler pointed out that "the main object of the suit was to cancel the conveyances which the plaintiff had made and to recover back the property," yet it was held that as fraud was shown as the basis for the cancellation, exemplary damages could be recovered.

In Graham v. Roder, 5 Tex. 141, the Supreme Court held that where plaintiff had fraudulently sold a land certificate, the plaintiff was entitled to recover as actual damages the agreed value of a wagon delivered to settle the note given for the certificate, and that in considering whether or not the district court had jurisdiction of the case, the pleadings relating to a recovery for exemplary damages must be considered. This is a direct holding that in fraud cases when the return of consideration paid is sought, exemplary damages may be recovered.

In Hubby v. Stokes, 22 Tex. 217, it appears that the defendant, through false rep-

resentations, sold a worthless Negro slave. The actual damages amounted to $400, the amount of the purchase price paid. The parties treated the case as one involving a breach of warranty and the plaintiff filed a remittitur of exemplary damages. The Supreme Court said that "the judgment might be maintained on the distinct ground of manifest fraud in fact, independently of the supposed warranty," and that "plaintiff's counsel very unnecessarily remitted a considerable portion of the verdict found under the instruction respecting exemplary damages." See also, Hall v. York, 22 Tex. 641; Jesse French Piano & Organ Co. v. Gibbon, Tex.Civ.App., 180 S.W. 1185.

In Mossop v. Zapp, Tex.Civ.App., 189 S.W. 979, 981, this Court allowed the recovery of $1,500 paid to defendant by plaintiff as the result of fraud and also allowed $500 exemplary damages. This Court, speaking through Mr. Justice Swearingen, said that "Under such circumstances (deliberate fraud and malicious intent) the law of Texas now authorizes a recovery of exemplary damages."

In Western Cottage Piano & Organ Co. v. Anderson, Tex.Civ.App., 101 S.W. 1061, a recovery of the amount paid by plaintiff to defendant as a result of fraudulent representations was allowed and described as "actual damages," together with a recovery of $1,000 exemplary damages.

In Gulf Coast & Santa Fe Ry. Co. v. Levy, 59 Tex. 542, heretofore cited, Judge Stayton points out that forms of action have been abolished in Texas, and that, "We have regard to the facts constituting the cause of complaint, and afford the plaintiff the most ample redress and relief which the facts will justify."

In Hawthorne v. Walton, Tex.Civ.App., 30 S.W.2d 397, 399, this Court affirmed an award of $10,000 exemplary damages. It appears that the actual damages supporting this award were measured by the sum of $6,050 paid by the Waltons on the purchase price of the land involved. Chief Justice Fly, writing the opinion for the Court, held that appellees "were deprived of their money" by fraud and deceit and were entitled to recover "their actual damages as well as exemplary damages."

The case of Bush v. Gaffney, Tex.Civ.App., 84 S.W.2d 759, by this Court, is not in point here. It was there held that despite the fact that in Texas a court may grant both legal and equitable relief, as was done in the present case, yet where a plaintiff elected to proceed in equity, he could not recover exemplary damages. The holding is based upon the view that a court of equity was a court of conscience and that the recovery of punitive damages was repugnant to equitable principles. In the case before us, it cannot be contended that appellees were suing in equity, insofar as the $300 overpayment is concerned. Even the old common law assumpsit count of money had and received is not an equitable remedy. There is a clear and admitted conflict between Bush v. Gaffney and the Supreme Court case of Oliver v. Chapman, 15 Tex. 400, upon the question of the recovery of exemplary damages in a rescission suit, Tex.Civ.App., 84 S.W.2d 764. So far as we have been able to find, the Supreme Court has never cited Bush v. Gaffney with approval, and, regardless of how the conflict may ultimately be resolved, we think the holding of Oliver v. Chapman is authority for the proposition that the recovery of the consideration paid as a result of fraud constitutes actual damages, and will serve as a basis for the recovery of exemplary damages. The case holds contrary to the proposition asserted by the appellant here.

In our opinion, the refusal of an award of exemplary damages in this case would be to give effect to an outmoded form of action never recognized in Texas. The assumpsit count of money had and received was to a large extent based upon a fictitious promise recognized by law in order to give a remedy to a person fraudulently deprived of his money. Whitcomb v. Brant, 90 N.J.L. 245, 100 A. 175, L.R.A. 1917D, 609. This fictitious device invented by the early common law judges to get at a wrongdoer should not at this late date be used as a shield to protect a wrongdoer. Appellant's fifth point is overruled.

By his sixth and seventh points, appellant asserts that the court's submission of the issue on exemplary damages was a charge upon the weight of the evidence. The authority relied upon is Southland Greyhound Lines v. Ashby, Tex.Civ. App., 80 S.W.2d 445, 446, wherein it was held improper to set forth in a special issue relating to actual damages the maximum amount of recovery prayed for in the petition. The question employed was: "What sum of money, *not in excess of $2,000.00,* if paid now in cash, would adequately compensate the plaintiff * * *."

The cited authority is not in point here. In the present case the court instructed the jury that if exemplary damages were allowed at all, there should be a reasonable ratio in the amount so allowed to the amount of $300 referred to in Special Issue No. 5. It is undisputed that if appellees were entitled to a money recovery, the amount thereof should be $300. By their answers to Special Issues Nos. 4 and 5, the jury found that appellees had paid $300 to Briggs because of his fraudulent representations to them. The trial court did not, by the wording of either Special Issue No. 5 or Special Issue No. 8, with its explanatory instruction, suggest that the jury find that appellees had sustained either actual or exemplary damages. The charge was not on the weight of the evidence. On the contrary, the explanatory instruction was a proper one, appropriately worded and entirely applicable to the facts of this case. In effect the jury were correctly charged that the amount of exemplary damages should be reasonably proportioned to the actual damages sustained. 13 Tex.Jur. 248, Damages, § 138.

Appellant's sixth and seventh points are overruled.

The judgment appealed from is affirmed.

W. O. MURRAY, Chief Justice (dissenting).

I find that I am unable to concur in the majority opinion and therefore respectfully enter my dissent thereto. Appellees' petition states two causes of action, one seeking to set aside a royalty deed covering thirty acres of land, and the other in the nature of assumpsit for the recovery of an over-payment of purchase price for land in the sum of $300.

The cause of action to set aside the royalty deed is a suit to cancel a written instrument and is governed by the four-year statute of limitations. Art. 5527, Vernon's Ann.Civ.Stats. The suit was filed within the four-year period and was therefore timely brought. The jury found that appellees were induced to sign the instrument by false representations and that they never in fact appeared before a notary public and acknowledged such instrument. Clearly under such findings they were entitled to have this instrument set aside and cancelled and appellant does not here contend otherwise. I agree that this part of the judgment which cancels the royalty deed should be affirmed.

The second cause of action being one in the nature of assumpsit for money had and received is governed by the two-year statute of limitations. Art. 5526, Vernon's Ann.Civ.Stats. It was not brought within that period and was therefore barred. 29 Tex.Jur. p. 736, § 6, and p. 731, § 3; 28 Tex.Jur. p. 123, § 42; Johnson v. Johnson, Tex.Civ.App., 206 S.W. 369; Anders v. Johnson, Tex.Com.App., 288 S.W. 168; Mitchell Greer Co. v. Mitchell, Tex.Civ. App., 246 S.W. 690; Causeway Inv. Co. v. Nass, 131 Tex. 12, 111 S.W.2d 703, 112 S. W.2d 712, affirmed, Tex.Civ.App., 84 S.W. 2d 571; United States Fidelity & Guaranty Co. v. First Nat. Bank, Tex.Civ.App., 93 S.W.2d 562; Settegast v. Harris County, Tex.Civ.App., 159 S.W.2d 543.

Appellees contend that this is a suit based upon fraud and that limitation would not start to run until the discovery of the fraud, which was in November, 1949, immediately after which the suit was filed. I cannot agree that this is a suit based upon fraud. The recovery here is not based upon injury resulting from fraud but simply for money had and received. Where a suit is based upon fraud, injury resulting from such fraud must be shown. Ulmer v. John Hancock Mut. Life Ins. Co., Tex.Civ.App., 161 S.W.2d 862; Imle **v.**

Brill, Tex.Civ.App., 234 S.W.2d 288; 20 Tex.Jur. p. 68, § 39. In order to have shown injury resulting from fraud appellees would be required to show the value of the ten acres purchased, and that as a result of such fraud they were induced to pay more than the ten acres were worth. Briley v. Hay, Tex.Civ.App., 13 S.W.2d 997. The measure of damages would be the difference between what they paid and the value of the ten acres. 20 Tex.Jur. p. 146, § 97; 20 Tex.Jur. p. 190, § 134.

Appellees did not see fit to go into this matter but simply brought a suit for the recovery of the overpayment. This they were entitled to do even though they had made a profit out of their bargain. Appellant will not be permitted to be unjustly enriched at the expense of appellees, regardless of whether they have suffered any fraud damages or not. This is the very principle upon which a suit for money had and received is based. 4 Am.Jur. p. 509, § 20; 29 Tex.Jur. p. 733, § 2.

"Where a person obtains money of another by compulsion, extortion, oppression or fraud an action had and received will lie to recover it." 4 Am.Jur. p. 513, § 23.

Such a suit is not one in tort but one based upon an implied contract to return the money. 54 C.J.S., Limitations of Actions, p. 185, § 188; 37 C.J. p. 936, § 305.

This record shows that appellees paid a total consideration of about $3,250 for the thirty acres of land and sold it for the handsome sum of $12,000. This, no doubt, is the reason they decided not to base their suit upon fraud but to simply sue for money had and received.

However, if by any stretch of the imagination, this suit could be said not to be one for money had and received but one based upon fraud, still it would be barred by the two-year statute of limitations. It will be borne in mind that after the payment of the $300 appellant did nothing further to conceal the fraud, but mailed to appellees a deed by which they would have discovered the fraud, if they had read it or had it read, because the deed recited a cash consideration of $500 and not $800, and further disclosed the fact that the grantor had fraudulently retained one-fourth of the minerals. If this would not have constituted a discovery of the fraud, it would have been a discovery of such facts as would have caused a person of ordinary prudence to make an investigation and such investigation would have led to the actual discovery of the fraud. When appellees did have their deed read, it immediately led to the discovery of the fraud. It is the duty of a purchaser to read the deed by which he acquires title to land. The fact that appellees did not read English or that they had great confidence in appellant, whom they testified represented the seller and did not represent them would not justify their negligence in not having their deed read. Carrillo v. Carrillo, Tex.Civ.App., 289 S.W. 88; Kuhlman v. Baker, 50 Tex. 630; Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, 137 A.L.R. 263; Powell v. March, Tex.Civ. App., 169 S.W. 936.

Furthermore, appellees knew at the time they made the $300 overpayment that they had purchased the ten acres for a cash consideration of $500, and that Pate, Briggs or any one else had no right to demand of them an overpayment of $300. This is illustrated by their testimony. Appellee Castulo Rodriguez testified on this subject as follows:

"Q. Well, on or about March 9th, when he came out to your place and told you he was ready to close the deal and told you you would have to pay another five hundred dollars, who did he say was requiring that five hundred dollars? A. Mr. Briggs told me that Robin Pate had told him that he would have to have five hundred dollars more for the land.

"Q. Did you believe that? A. I thought it was true.

"Q. If you had contracted with Briggs to buy it for five hundred dollars and taxes, why did you pay eight hundred dollars and the taxes? A. Well, for the reason that I already grubbed the land and if I didn't pay that money I was going to lose everything."

Appellee Clara Rodriguez testified as follows: "Q. Well, what did you think about

his asking eight hundred dollars when you had only agreed to pay five hundred dollar? A. Yes, we knew, but we had the land all cleaned up and if we didn't do that we were going to lose a whole lot more."

Appellees knew they were paying $300 more than anybody had a right to require of them, but decided to do so in order to prevent a greater loss. The fact that Briggs represented to appellees that Pate wanted them to make the overpayment was incidental and collateral to the matter. 37 C.J. p. 936, § 305, Note 72. In 37 C.J., p. 793, § 133, it is stated: " * * * and the statute does not apply where no relief of any kind is asked against defendant because of his fraud." See also, 53 C.J.S., Limitations of Actions, § 91. See also Boyer v. Barrows, 166 Cal. 757, 138 P. 354; Obermeyer v. Kirshner, 225 Mo.App. 734, 38 S.W.2d 510; Byrd v. Rautman, 85 Md. 414, 36 A. 1099.

Appellees' knowing at the time they made the cash payment that they were making an overpayment which neither Briggs nor Pate had a right to demand of them, was knowledge of the fraud, or was at least such knowledge as should have caused them to make an investigation which would have led to a discovery of the fraud. Appellees having waited more than two years to recover an overpayment, which they knew was an overpayment at the time they made it, were barred by the two-year statute of limitation. Art. 5526, supra. It follows that the claim for the recovery of the overpayment being barred, any claim for exemplary damages based thereon was also barred by the same statute.

Furthermore, appellees having waived the fraud and having sued for money had and received, which is a suit ex contractu and not ex delicto, were not entitled to recover exemplary damages. There is no showing that appellees were injured by the alleged fraud in that they were induced to pay more for the land than it was worth; on the contrary it appears that perhaps they made a very nice bargain. They made the overpayment knowingly, apparently because they desired to buy their peace and thus avoid a lawsuit. Such facts do not present a case that will justify the recovery of exemplary damages in more than three times the amount of the overpayment which they knowingly made. The misrepresentation here related to who was going to receive the overpayment, and did not relate to the value of the land. Appellees knew full well the amount of the land, its value and what they were paying for it. The only thing they did not know was that Briggs was going to keep the overpayment and not turn it over to Pate.

In my opinion the judgment should be reformed so as to eliminate therefrom the recovery of the $300 overpayment and the $1,000 for exemplary damages, and as thus reformed the judgment should be affirmed.